ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
WESLEY L. HSU (Cal. State Bar No.: 188015)
Assistant United States Attorney
Chief, Cyber and Intellectual Property Crimes Section
LISA E. FELDMAN (Cal. State Bar No.: 130019)
Assistant United States Attorney
Cyber and Intellectual Property Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3045/0633
    Facsimile: (213) 894-0141
    E-mail: wesley.hsu@usdoj.gov
           lisa.feldman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>        v.<br><br>CHRISTOPHER CHANEY,<br>    aka "trainreqsuckswhat",<br>    aka "anonygrrl",<br>    aka "jaxjaguars911",<br><br>                Defendant. | CR No. 11-958(A)-SJO<br><br>GOVERNMENT'S FILING OF **REVISED** PLEA AGREEMENT FOR DEFENDANT CHRISTOPHER CHANEY FOLLOWING CHANGE OF PLEA HEARING ON MARCH 26, 2012 |

      Pursuant to the change of plea hearing conducted before this Court on March 26, 2012, plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Wesley L. Hsu and Lisa E. Feldman, hereby files the

//

//

the attached revised plea agreement which reflects handwritten revisions made to the plea agreement originally filed on March 22, 2012.

DATED: March 26, 2012          Respectfully submitted,

                               ANDRÉ BIROTTE JR.
                               United States Attorney

                               ROBERT E. DUGDALE
                               Assistant United States Attorney
                               Chief, Criminal Division

                               _____/s/_____
                               LISA E. FELDMAN
                               Assistant United States Attorney
                               Cyber and Intellectual Property
                               Crimes Section

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

```
 1  ANDRÉ BIROTTE JR.
    United States Attorney
 2  ROBERT E. DUGDALE
    Assistant United States Attorney
 3  Chief, Criminal Division
    WESLEY L. HSU (Cal. State Bar No.: 188015)
 4  LISA E. FELDMAN (Cal. State Bar No.: 130019)
    Assistant United States Attorney
 5  Cyber and Intellectual Property Crimes Section
         1200 United States Courthouse
 6       312 North Spring Street
         Los Angeles, California 90012
 7       Telephone: (213) 894-3045/0633
         Facsimile: (213) 894-0141
 8       E-mail: wesley.hsu@usdoj.gov
                 lisa.feldman@usdoj.gov
 9
    Attorneys for Plaintiff
10  UNITED STATES OF AMERICA
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| UNITED STATES OF AMERICA, | ) CR No. 11-958(A)-SJO |
|---|---|
| Plaintiff, | ) PLEA AGREEMENT FOR DEFENDANT<br>) CHRISTOPHER CHANEY |
| v. | ) |
| CHRISTOPHER CHANEY,<br>    aka "trainreqsuckswhat",<br>    aka "anonygrrl",<br>    aka "jaxjaguars911", | ) |
| Defendant. | ) |

1.  This constitutes the plea agreement between CHRISTOPHER CHANEY aka "trainreqsuckswhat", aka "anonygrrl", aka "jaxjaguars911" ("defendant"), and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory

1  authorities.

## DEFENDANT'S OBLIGATIONS

2. Defendant agrees to:

a) At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts one, three, seven, eight, nine, ten, twenty, twenty-two, and twenty-eight of the First Superseding Indictment in <u>United States v. Christopher Chaney</u>, CR No. 11-958(A)-SJO, which charges defendant with Unauthorized Access to a Protected Computer, in violation of 18 U.S.C. §§ 1030(a)(2)(C), (c)(2)(B)(ii); Unauthorized Damage to a Protected Computer, in violation of 18 U.S.C. §§ 1030(a)(5)(A), (c)(4)(B)(i), (c)(4)(A)(i)(I), (c)(4)(A)(i)(III); ~~Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1)~~; and Wiretapping, in violation of 18 U.S.C. § 2511(1)(a).

b) Not contest facts agreed to in this agreement.

c) Abide by all agreements regarding sentencing contained in this agreement.

d) Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e) Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f) Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g) Pay the applicable special assessments at or before

*[handwritten margin notes: "3-26-12", "LT", "LT"]*

1  the time of sentencing unless defendant lacks the ability to pay
2  and prior to sentencing submits a completed financial statement
3  on a form to be provided by the USAO.
4             h) Agree to and not oppose the imposition of the
5  following conditions of probation or supervised release:
6                  1) Before using a computer or computer-related
7  device capable or accessing the Internet, screen name, password,
8  e-mail account or ISP for the first time, defendant shall notify
9  his Probation Officer.  Computers and computer-related devices
10 include, but are not limited to, personal computers, personal
11 data assistants (PDAs), Internet appliances, electronic games,
12 and cellular telephones, as well as their peripheral equipment,
13 that can access or can be modified to access the Internet,
14 electronic bulletin boards, and other computers, or similar
15 media.
16                 2) After notifying his Probation Officer about a
17 particular computer, computer-related device, screen name,
18 password, e-mail account or ISP, defendant need not notify the
19 officer about subsequent use of that particular item.  Defendant
20 shall, however, notify his Probation Officer of any additions to,
21 removals from, upgrades of, updates of, reinstallations of,
22 repairs of, or other modifications of the hardware or software on
23 any computers, computer-related devices, or peripheral equipment
24 in the aforementioned items within one week of the change.
25                 3) Defendant shall provide his Probation Officer
26 with all billing records for phone, cable, Internet and satellite
27 services that he purchases, as requested by the Probation
28

1  Officer, so that his Probation Officer can verify his compliance
2  with these requirements.
3           4)   All computers, computer-related devices and
4  their peripheral equipment used by defendant shall be subject to
5  search and seizure by making a mirror image of the device or
6  searching the computer on-site.  The defendant shall not hide or
7  encrypt files or data without prior approval from the Probation
8  Officer.
9       i) Not seek the discharge of any restitution
10 obligation, in whole or in part, in any present or future
11 bankruptcy proceeding.
12      3.   Defendant further agrees:
13           a)   To forfeit all right, title, and interest in the
14 following digital devices seized by law enforcement officials on
15 February 10, 2011 from defendant's residence located in
16 Jacksonville, Florida, during the execution of a federal search
17 warrant:  (1) desktop computer with black "Exblade" case; (2)
18 Seagate hard drive, serial number 2GHkEBX8; (3) Sandisk Cruzer
19 8gb USB drive; (4) Cingular Motorola cell phone; and (5) 155
20 CD/DVD media, ~~and the following digital devices seized by law~~
21 ~~enforcement officials on November 1, 2011 from defendant's~~
22 ~~residence in Jacksonville, Florida during the execution of a~~
23 ~~federal search warrant: (1) One HP laptop computer G60, S/N~~
24 ~~2CE8491KYK; and (2) One HP desktop pavilion M9400Z, S/N~~
25 ~~MXV84401DQ~~ (all of the above-described digital devices are
26 collectively referred to as "the assets").
27           b)   To the Court's entry of an order of forfeiture at
28 or before sentencing with respect to the assets and to the

4

1  forfeiture of the assets.

2      c) To take whatever steps are necessary to pass to
3  the United States clear title to the assets described above,
4  including, without limitation, the execution of a consent decree
5  of forfeiture and the completing of any other legal documents
6  required for the transfer of title to the United States.

7      d) Not to assist any other individual in any effort
8  falsely to contest the forfeiture of the assets described above.

9      e) Not to claim that reasonable cause to seize the
10 assets was lacking.

11     f) That forfeiture of assets described above shall
12 not be counted toward satisfaction of any special assessment,
13 fine, restitution, or any other penalty the Court may impose.

## THE USAO'S OBLIGATIONS

15   4. The USAO agrees to:

16     a) Not contest facts agreed to in this agreement.

17     b) Abide by all agreements regarding sentencing
18 contained in this agreement.

19     c) At the time of sentencing, move to dismiss the
20 remaining counts of the First Superseding Indictment as against
21 defendant. Defendant agrees, however, that at the time of
22 sentencing the Court may consider any dismissed charges in
23 determining the applicable Sentencing Guidelines range, the
24 propriety and extent of any departure from that range, and the
25 sentence to be imposed.

26     d) At the time of sentencing, provided that defendant
27 demonstrates an acceptance of responsibility for the offenses up
28 to and including the time of sentencing, recommend a two-level

reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

## NATURE OF THE OFFENSES

5.  Defendant understands that for defendant to be guilty of the crime charged in counts one, three, and seven, that is, Unauthorized Access to a Protected Computer, in violation of 18 U.S.C. §§ 1030(a)(2)(C), (c)(2)(B)(ii), the following must be true: (1) defendant intentionally accessed without authorization, or exceeded authorized access, to a computer; and (2) by accessing without authorization or exceeding authorized access to a computer, defendant obtained information from a computer that was used in or affected commerce or communication between one state and another state or between a state of the United States and a foreign country.

6.  Defendant understands that for defendant to be subject to the statutory maximum sentence for counts one, three, and seven, in violation of 18 U.S.C. §§ 1030(a)(2)(C), (c)(2)(B)(ii), as set forth below, the government must prove beyond a reasonable doubt that defendant committed the offense in furtherance of any criminal or tortious act in violation of the Constitution or laws of the United States or of any State, namely, wiretapping, in violation of 18 U.S.C. § 2511(1)(a) (counts one and three) and wire fraud, in violation of 18 U.S.C. § 1343 (count seven). To be guilty of wiretapping, in violation of 18 U.S.C. § 2511(1)(a), the following must be true: (1) defendant intercepted or endeavored to intercept, an electronic communication; (2)

defendant knew the information was from an intercepted electronic communication; and (3) defendant knew or should have known the interception was illegal. To be guilty of wire fraud, in violation of 18 U.S.C. § 1343, the following must be true: (1) defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (2) the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and (4) defendant used, or caused to be used, the wires in interstate or foreign commerce to carry out or attempt to carry out an essential part of the scheme. Defendant admits that defendant, in fact, committed the offense in furtherance of any criminal or tortious act in violation of the Constitution or laws of the United States or of any State, as described in counts one, three and seven of the First Superseding Indictment.

7. Defendant understands that for defendant to be guilty of the crime charged in counts eight and nine, that is, Unauthorized Damage to a Protected Computer, in violation of 18 U.S.C. §§ 1030(a)(5)(A), (c)(4)(B)(i), (c)(4)(A)(i)(I), the following must be true: (1) defendant knowingly caused the transmission of a program, information, a code, or a command to a computer; (2) as a result of the transmission, the defendant intentionally and without authorization impaired the integrity or availability of

1  data, a program, a system, or information; and (3) the impaired
2  computer was used in interstate or foreign commerce or
3  communication.
4        8.  Defendant understands that for defendant to be subject
5  to the statutory maximum sentence for counts eight and nine, in
6  violation of 18 U.S.C. §§ 1030(a)(5)(A), (c)(4)(B)(i),
7  (c)(4)(A)(i)(I), as set forth below, the government must prove
8  beyond a reasonable doubt that the damage caused a loss aggregating at least $5,000 ~~over $5,000 loss~~
9  to one or more individuals in a one-year period.  Defendant
10 admits that the damage caused over $5,000 loss to one or more
11 individuals in a one-year period, as described in counts eight
12 and nine of the First Superseding Indictment.
13       9.  Defendant understands that for defendant to be guilty of
14 the crime charged in count ten, that is, Unauthorized Damage to a
15 Protected Computer, in violation of 18 U.S.C. §§ 1030(a)(5)(A),
16 (c)(4)(B)(i), (c)(4)(A)(i)(III), the following must be true:
17 (1) defendant knowingly caused the transmission of a program,
18 information, a code, or a command to a computer;
19 (2) as a result of the transmission, the defendant intentionally
20 and without authorization impaired the integrity or availability
21 of data, a program, a system, or information; and (3) the
22 impaired computer was used in interstate or foreign commerce or
23 communication.
24       10. Defendant understands that for defendant to be subject
25 to the statutory maximum sentence for count ten, in violation of
26 18 U.S.C. §§ 1030(a)(5)(A), (c)(4)(B)(i), (c)(4)(A)(i)(III), as
27 set forth below, the government must prove beyond a reasonable
28 doubt that physical harm resulted from the conduct.  Defendant

[handwritten margin notes: 3-26-12, JG4, JKH, @, cc.]

admits that physical harm resulted from the conduct, as described in count ten of the First Superseding Indictment.

11.  Defendant understands that for defendant to be guilty of the crime charged in counts twenty, twenty-two and twenty-eight, that is, Wiretapping, in violation of 18 U.S.C. § 2511(1)(a), the following must be true: (1) defendant intercepted or endeavored to intercept, an electronic communication; (2) defendant knew the information was from an intercepted electronic communication; and (3) defendant knew or should have known the interception was illegal.

### PENALTIES AND RESTITUTION

12.  Defendant understands that the statutory maximum sentence that the Court can impose for each violation of 18 U.S.C. §§ 1030(a)(2)(C), (c)(2)(B)(ii), is: five years imprisonment; a three-year period of supervised release; a fine of $ 250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $ 100.

13.  Defendant understands that the statutory maximum sentence that the Court can impose for each violation of 18 U.S.C. §§ 1030(a)(5)(A), (c)(4)(B)(i), (c)(4)(A)(i)(I), is: ten years imprisonment; a three-year period of supervised release; a fine of $ 250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $ 100.

14.  Defendant understands that the statutory maximum sentence that the Court can impose for each violation of 18 U.S.C. §§ 1030(a)(5)(A), (c)(4)(B)(i), (c)(4)(A)(i)(III), is:

1  ten years imprisonment; a three-year period of supervised
2  release; a fine of $ 250,000 or twice the gross gain or gross
3  loss resulting from the offense, whichever is greatest; and a
4  mandatory special assessment of $ 100.
5      15. Defendant understands that the statutory maximum
6  sentence that the Court can impose for each violation of 18
7  U.S.C. § 2511(1)(a), is: five years imprisonment; a three-year
8  period of supervised release; a fine of $ 250,000 or twice the
9  gross gain or gross loss resulting from the offense, whichever is
10 greatest; and a mandatory special assessment of $ 100.
11     16. Defendant understands, therefore, that the total
12 maximum sentence for all offenses to which defendant is pleading
13 guilty is: 60 years imprisonment; a three-year period of
14 supervised release; a fine of $ 2,250,000 or twice the gross gain
15 or gross loss resulting from the offenses, whichever is greatest;
16 and a mandatory special assessment of $ 900.
17     17. Defendant understands that defendant will be required to
18 pay full restitution to the victims of the offenses to which
19 defendant is pleading guilty.  Defendant agrees that, in return
20 for the USAO's compliance with its obligations under this
21 agreement, the Court may order restitution to persons other than
22 the victim(s) of the offenses to which defendant is pleading
23 guilty and in amounts greater than those alleged in the counts to
24 which defendant is pleading guilty.  In particular, defendant
25 agrees that the Court may order restitution to any victim of any
26 of the following for any losses suffered by that victim as a
27 result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3,
28 in connection with the offenses to which defendant is pleading

guilty and (b) any counts dismissed. The parties currently believe that the applicable amount of restitution is ~~at least~~ between $15,000 and $400,000 ~~$100,000~~, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

*[Handwritten margin notes: "3-26-12", "between $15,000 and 400,000", "C.C.", "JRH", initials]*

18. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

19. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw

1  defendant's guilty plea.

2  20. Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future. The court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case. Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

## FACTUAL BASIS

21. Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 23 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

> From at least on or about November 13, 2010 until on or about October 10, 2011, defendant accessed without authorization (i.e. hacked into) the e-mail accounts belonging to more than 50 members of the entertainment industry, some of whom lived in Los Angeles, California. These victims include Simone Harouche, Mila Kunis, C.B., Scarlett Johansson, and Renee Olstead. Using his home computer in Jacksonville, Florida, defendant accessed the victims' e-mail accounts by using each victim's e-mail address, clicking on the "Forgot your password?" feature, and

then re-setting the victims' passwords by correctly answering their security questions using publicly available information he found by searching the Internet. Once defendant had exclusive control of the victims' e-mail accounts, he was able to access all of the victims' e-mails and attachments, including e-mails in the victims' in boxes and sent boxes. Defendant illegally accessed the e-mail accounts of the following people on the following dates, among other dates: Simone Harouche on November 13, 2010, Mila Kunis on December 18, 2010, Scarlett Johansson on December 14, 2010, and Renee Olstead on February 8, 2011, respectively.

While defendant had exclusive control of the victims' e-mail accounts, he also went through their contact lists to find the e-mail addresses of other individuals in the entertainment industry, which defendant would then use as potential victims to continue his e-mail hacking scheme.

For most victims, including Simone Harouche, Mila Kunis, and Renee Olstead, once defendant had exclusive access to their e-mail accounts, he also went into the victim's e-mail account settings and changed the "forwarding" feature to include defendant's alias e-mail address, nickchulbert@yahoo.com, which defendant created and controlled. As defendant well knew, while all incoming e-mails would continue to be sent to the victims' e-mail accounts, defendant's action caused a duplicate copy of every incoming e-mail received into the victims' e-mail accounts -- including any attachments -- to be sent virtually simultaneously to defendant's alias account at nickchulbert@yahoo.com without the victims' knowledge. Defendant created the nickchulbert@yahoo.com account for the sole purpose of receiving copies of the victims' incoming e-mails and during the time period of defendant's e-mail hacking scheme, his account nickchulbert@yahoo.com received thousands of victim e-mails.

When defendant's password resets locked victims out of their accounts, many victims contacted their Internet Service Providers, namely, Apple, Google, Yahoo, and America Online, which helped them to reset their passwords once again and regain control of their e-mail accounts. Most victims, however, did not check their e-mail account settings, so even after they regained control of their e-mail accounts, defendant's alias account at nickchulbert@yahoo.com remained in the "forwarding" feature of their account settings. Thus, for many victims, copies of their incoming e-mails, including attachments, were sent to defendant for weeks or months without their knowledge. Moreover, when a victim reset his/her password to regain control over

13

his/her e-mail account, defendant sometimes hacked into the account again and reset the password, sometimes multiple times, in order to continue illegally accessing that victim's account.

As his hacking scheme became more extensive, defendant began using a proxy service called "Hide My IP," which allows Internet users to access various Internet services without revealing their actual Internet Protocol ("IP") address. Defendant began using the "Hide My IP" service because he knew what he was doing was illegal and wanted to "cover his tracks" so law enforcement authorities would not trace his hacking scheme back to his computer at his residence.

As a result of his hacking scheme as described above, defendant obtained numerous private communications, private photographs of victims, and confidential documents, which had been e-mailed by or to the victims. The confidential documents included business contracts, scripts, and letters, as well as the driver's licenses and social security cards of some victims. In many instances, defendant downloaded the victims' photographs and confidential documents to his home computer, where he saved them on his computer hard drive in separate computer file folders.

Defendant also forwarded many of the photographs he illegally obtained from his hacking scheme to third parties, including another hacker and two gossip websites. Defendant did not do so for money or other financial gain. Defendant distributed the photographs using the following additional alias email addresses he created and controlled for the sole purpose of hiding his true identity from each of those third parties: (1) anonygrrl@yahoo.com, (2) trainreqsuckswhat@yahoo.com, and (3) jaxjaguars911@gmail.com. Defendant's distribution to third parties caused some of the photographs, which were explicit, to be posted on the Internet.

On several occasions during the scheme, once defendant had exclusive access to a victim's e-mail account, he sent an e-mail from the victim's e-mail account to someone else fraudulently posing as the victim, to request more photographs. For example, on or about December 2, 2010, while illegally accessing stylist Simone Harouche's email account and while fraudulently posing as Harouche, defendant sent an e-mail from Harouche's e-mail account to Christina Aguilera, one of Harouche's clients. The e-mail asked Aguilera to send Harouche photographs of Aguilera wearing very little clothing. Although defendant tried to reset the password for Aguilera's e-mail account, he was unable to do so. Defendant later posted onto the Internet private photographs of Aguilera that he

14

illegally obtained from Harouche's e-mail account. In addition, on or about January 1, 2011, while illegally accessing Scarlett Johansson's e-mail account and while fraudulently posing as Johansson, defendant sent an e-mail from Johansson's e-mail account to a friend of Johansson's asking for private photographs of Johansson.

Defendant's computers were seized by law enforcement authorities during the execution of a federal search warrant at defendant's residence on February 10, 2011. During that search, defendant was interviewed by law enforcement authorities and confessed to the hacking scheme described above.

On or about April 30, 2011, and again on or about October 10, 2011, defendant used another computer to hack into C.B.'s e-mail account and sent e-mails to a friend of C.B from C.B.'s e-mail account. In those e-mails, defendant, fraudulently posing as C.B., claimed to have lost all of C.B.'s photographs and asked C.B's friend to forward any photographs of C.B., or of C.B. and the friend together, to C.B. at her e-mail account. As a result of defendant's fraudulent misrepresentations, the friend responded to defendant's October 10, 2011 e-mail by forwarding private photographs of C.B. to C.B.'s account which defendant had illegally accessed. Defendant sent the above-described e-mails from C.B.'s e-mail account with the intent to deceive in an effort to fraudulently obtain private photographs of C.B.

Defendant committed each of the above-described acts intentionally and without authorization and by doing so, obtained information from the victims' e-mail accounts. Moreover, in committing the acts described above, defendant caused a loss aggregating at least $ 5,000 to Simone Harouche and Christina Aguilera during the one-year period beginning on or about November 13, 2010 and a loss aggregating at least $ 5,000 to Scarlett Johansson during the one-year period beginning on or about December 14, 2010. In committing the conduct described above, defendant also caused physical harm to Renee Olstead and a loss aggregating at least $ 5,000 during the one-year period beginning on or about March 14, 2011 to Renee Olstead and her insurance provider.