1  ANDRÉ BIROTTE JR.
   United States Attorney
2  ROBERT E. DUGDALE
   Assistant United States Attorney
3  Chief, Criminal Division
   WESLEY L. HSU (Cal. State Bar No.: 188015)
4  LISA E. FELDMAN (Cal. State Bar No.: 130019)
   Assistant United States Attorneys
5  Cyber and Intellectual Property Crimes Section
        1200 United States Courthouse
6       312 North Spring Street
        Los Angeles, California 90012
7       Telephone: (213) 894-3045/0633
        Facsimile: (213) 894-0141
8       E-mail:   wesley.hsu@usdoj.gov
                  lisa.feldman@usdoj.gov
9
   Attorneys for Plaintiff
10 UNITED STATES OF AMERICA

11

12                 UNITED STATES DISTRICT COURT

13            FOR THE CENTRAL DISTRICT OF CALIFORNIA

14                      WESTERN DIVISION

15 UNITED STATES OF AMERICA,        ) CR No. 11-958(A)-SJO
                                    )
16                 Plaintiff,       ) GOVERNMENT'S POSITION RE:
                                    ) SENTENCING OF DEFENDANT
17            v.                    ) CHRISTOPHER CHANEY; EXHIBIT
                                    )
18 CHRISTOPHER CHANEY,              ) Sent. Date:    July 23, 2012
      aka "trainreqsuckswhat",      ) Sent. Time:    9:00 a.m.
19    aka "anonygrrl",              )
      aka "jaxjaguars911",          )
20                                  )
                                    )
21            Defendant.            )

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES   . . . . . . . . . . . . . . . . . . . .   ii

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . 1

II.  ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.   NATURE AND CIRCUMSTANCES OF THE OFFENSES   . . . . . . 4

     B.   HISTORY AND CHARACTERISTICS OF DEFENDANT   . . . . . . 8

     C.   NEED FOR DETERRENCE . . . . . . . . . . . . . . . . .  10

     D.   THE KINDS OF SENTENCES AND THE
          SENTENCING GUIDELINES . . . . . . . . . . . . . . . . 11

     E.   NEED TO AVOID UNWARRANTED SENTENCING DISPARITY   . .  11

     F.   RESTITUTION . . . . . . . . . . . . . . . . . . . . . 15

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 15

1

**TABLE OF AUTHORITIES**

2 **FEDERAL STATUTES**

3   18 U.S.C. § 1030(a)(5)(A) . . . . . . . . . . . . . . . . . . 2

4   18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . 3

5   18 U.S.C. § 3553(a)(1) . . . . . . . . . . . . . . . . . . 4

6   18 U.S.C. § 3553(a)(2) . . . . . . . . . . . . . . . . . . 10

7   18 U.S.C. § 3553(a)(3) . . . . . . . . . . . . . . . . . . 10

8   18 U.S.C. § 3553(a)(4) . . . . . . . . . . . . . . . . . . 10

9   18 U.S.C. § 3553(a)(5) . . . . . . . . . . . . . . . . . . 10

10  18 U.S.C. § 3553(a)(6) . . . . . . . . . . . . . . . . . . 11

11  18 U.S.C. § 3553(a)(7) . . . . . . . . . . . . . . . . . . 15

12 **SENTENCING GUIDELINES**

13  U.S.S.G. § 2B1.1(a)(2) . . . . . . . . . . . . . . . . . . . 1

14  U.S.S.G. § 2B1.1(b)(1) . . . . . . . . . . . . . . . . . . 6

15  U.S.S.G. § 2B1.1(b)(1)(F) . . . . . . . . . . . . . . . . . 2

16  U.S.S.G. § 2B1.1(b)(10) . . . . . . . . . . . . . . . . . . 2

17  U.S.S.G. § 2B1.1(b)(16) . . . . . . . . . . . . . . . . . . 2

18  U.S.S.G. § 2B1.1(b)(17) . . . . . . . . . . . . . . . . . . 2

19  U.S.S.G. § 3E1.1 . . . . . . . . . . . . . . . . . . . . . 2

20  U.S.S.G. § 2B1.1 cmt. n.19(A)(ii) . . . . . . . . . . . . . 7

21  U.S.S.G. § 2B1.1 cmt. n.19(A)(iv) . . . . . . . . . . . . . 6

22 **CASES**

23  United States v. Christopher Osinger
          CR 10-758-ODW  . . . . . . . . . . . . . . . . . . 14

24
    United States v. Luis Mijangos
25        CR 10-743-GHK  . . . . . . . . . . . . . . 12, 13

26  United States v. Michael David Barrett
          CR 09-1215-R . . . . . . . . . . . . . . . . . 13, 14

27

28

# I.

## INTRODUCTION

Defendant Christopher Chaney ("defendant") hacked into the private e-mail accounts of over 50 individuals, most of whom were involved in the entertainment industry.  With his unauthorized access, he wiretapped most of those accounts so that he captured and therefore could read every email that his victims received. Defendant caused dozens of extremely private photographs of his victims to be posted to the Internet, from where they cannot be removed.  Defendant's crimes caused emotional distress to multiple victims and significant physical harm to at least one victim.  Defendant continued his crimes even after the Federal Bureau of Investigation ("FBI") searched his home and seized his computer and despite the fact that he has a prior federal felony conviction.  Defendant's serious and egregious conduct warrants a sentence of 71 months of imprisonment, a sentence at the high end of the applicable advisory Guidelines range.[1]

Plaintiff, United States of America, by and through its counsel of record, Assistant United States Attorneys Wesley L. Hsu and Lisa E. Feldman, respectfully requests that the Court adopt the advisory Sentencing Guidelines calculation set forth in the Presentence Report ("PSR") for defendant Christopher Chaney ("defendant").  Specifically, the government requests that the Court adopt a total offense level of 25 (based upon a base offense level of 6 (U.S.S.G. § 2B1.1(a)(2)), an increase of +10

---

[1]  This sentencing recommendation assumes that defendant will continue to fully accept responsibility for his crimes until the time of sentencing.

1  based on loss of between $120,000 and $200,000 (U.S.S.G.

2  § 2B1.1(b)(1)(F)), an increase of +4 for more than 50 victims

3  (U.S.S.G. § 2B1.1(b)(2)), an increase of +2 for use of

4  sophisticated means (U.S.S.G. § 2B1.1(b)(10)), an increase of +2

5  for a conviction under § 1030 involving the intent to obtain

6  personal information and the unauthorized public dissemination of

7  personal information (U.S.S.G. § 2B1.1(b)(16)), an increase of +4

8  for conviction under 18 U.S.C. § 1030(a)(5)(A) (U.S.S.G.

9  § 2B1.1(b)(17)), and, assuming defendant continues to fully

10 accept responsibility for his criminal conduct, -3 for acceptance

11 of responsibility (U.S.S.G. § 3E1.1) as well as a criminal

12 history category of I.  The government has no objection to the

13 factual statements[2] used to support these calculations nor to the

14

15     [2]  The government offers the following corrections that do
not affect the Sentencing Guidelines calculations:  In paragraph
3, the counts listed in table form should state Counts One, Three
16 and Seven of the First Superseding Indictment, and the date of
Count Three should be December 18, 2010.  In paragraph 4, the PSR
17 describes the charge in Count Ten as involving loss of at least
$5,000 but it omits reference to physical harm, which defendant
18 admitted as part of his plea occurred in this case.  In the same
paragraph, Simone Harouche is also a victim in Count Eight, and
19 the dates for Counts Nine and Ten should be December 14, 2010 and
February 8, 2011, respectively.  In paragraph 6a, the parties
20 agreed to an increase in loss between +4 and +12.  In paragraph
26a, Aguilera did not respond with the requested photos, but
21 rather, defendant posted photos that he had illegally obtained
from Harouche's e-mail account.  In paragraph 26b, the syntax of
22 the sentence suggests that the nude photographs of Scarlett
Johansson were received in response to an email defendant sent to
23 an acquaintance of Johansson.  That does not appear to be the
case.  Rather, the evidence shows that defendant obtained those
24 photographs out of Ms. Johansson's sent mail because Ms.
Johansson had, in the past, sent those photos to her then
25 husband.  As to paragraphs 27 and 34, there is no evidence that
nude photos of Mila Kunis were stolen or posted by defendant.
26 In paragraph 32, defendant stole several e-mail addresses
belonging to that victim, not just one.  (See Decl. Of Josh
27 Sadowsky ¶ 10 (filed concurrently under seal)).  Moreover, there
is a discrepancy in the amounts listed in paragraph 31c and 34b,
28 but the evidence supports the calculations set forth in paragraph

1  application of those facts to the Guidelines to arrive at the

2  total offense level.  This calculation results in an advisory

3  Guidelines range of 57-71 months.

4      Based on the factors set forth in 18 U.S.C. § 3553(a), the

5  government respectfully requests a sentence at the high end of

6  the applicable Guidelines range.  Specifically, the government

7  respectfully requests a sentence of 71 months imprisonment to be

8  followed by three years of supervised release, restitution in the

9  amounts of $7,500 to Christina Aguilera, $66,179.46 to Scarlett

10  Johansson, $76,767.35 to Renee Olstead, $10,374.59 to Aftra

11  Health Fund, and a special assessment of $900.

12  **II.**

13  **ANALYSIS**

14      A high-end sentence of 71 months imprisonment is a sentence

15  sufficient but not greater than necessary to meet the sentencing

16  goals of 18 U.S.C. § 3553(a).  Defendant's crimes were egregious

17  in several ways, including the number of victims, the extent of

18  harm caused, the invasiveness of his crimes, and his persistence

19  in continuing the crime even after his residence had been

20  searched by the FBI.  Furthermore, in comparison to other

21  sentences imposed in this district for similar conduct, the

22  sentence sought by the government is warranted here.  All of the

23  Section 3553(a) factors militate in favor of a Guidelines range

24  sentence of 71 months imprisonment.

25  //

26

27

28  34b.  None of these facts, however, change the advisory
    Guidelines calculation of the PSR.

A.   NATURE AND CIRCUMSTANCES OF THE OFFENSES

     With respect to the nature and circumstances of the offense
pursuant to Section 3553(a)(1), defendant's crimes warrant
significant punishment.  The government respectfully submits
that, assuming defendant continues to accept full responsibility
for his crimes, the advisory Guidelines range is appropriate in
this case and that a sentence at the high end of that range is
warranted because of several factors not fully accounted for in
the Guidelines calculation.  The scope, invasiveness, extent of
harm, and persistence of defendant's conduct all militate in
favor of a high-end sentence.

     "Between November 13, 2010 until October 10, 2011,
[defendant] accessed without authorization email accounts
belonging to more than 50 members of the entertainment industry."
(PSR ¶ 19).  Defendant gained unauthorized access to the accounts
by re-setting the passwords on the accounts using publicly
available information to answer the security questions for the
accounts.  (PSR ¶ 20).  "For most victims . . ., once [defendant]
had exclusive control over the email accounts, he accessed their
account setting and changed the 'forwarding' feature to include
[defendant's] alias email address . . . which [defendant] created
for the sole purpose of receiving copies of the victims' incoming
emails."  (PSR ¶ 22).  All of the victims' emails, including
attachments, were forwarded to defendant for weeks or months
without their knowledge.  (PSR ¶ 23).  Defendant would also use
"the victims' contact lists to find the email addresses of other
individuals in the entertainment industry which he used to
continue his 'hacking' scheme."  (PSR ¶ 21).

1    Defendant's hacking gave him access to private
2    communications, photographs, videos, and documents belonging to
3    the victims.  (PSR ¶ 25).  The private documents obtained
4    included "business contracts, scripts, letters, driver's license
5    numbers, and social security information."  (Id.).  The
6    photographs and videos included the victims and their
7    acquaintances nude and in sexually explicit situations.  (See PSR
8    ¶¶ 34-35).

9    Unsatisfied with those private materials, defendant went
10   further, on multiple occasions using the email accounts to
11   impersonate the victim to request additional private photographs
12   of the victim.  (PSR ¶¶ 26, 30; see also Def.'s Plea Agmt., ¶ 21
13   at 14-15).  At least once, on an occasion after defendant's
14   residence had already been searched by the FBI, the recipient of
15   the email, a secondary victim, complied.  (PSR ¶ 30).

16   Defendant did not, however, simply view the private
17   photographs that he obtained; he caused many of them to be posted
18   to the Internet.  He sent photos of multiple victims to third
19   parties, including another hacker and two gossip websites,
20   knowing that the photos would be uploaded to the Internet for the
21   public to see.  (See PSR ¶¶ 27-28).  Defendant was indifferent to
22   the fact that they would be posted for public-viewing, making
23   statements such as "I don't care if you share the pictures I've
24   sent you . . . as long as you never mention where you got them,"
25   "you can . . . post them a year from now," and "I don't care if
26   you post any of these," so long as he could avoid being caught.
27   (Id.).  Indeed, as the scheme expanded over time, he began using
28   "proxy servers" in an effort to hide his identity.  (PSR ¶ 24).

1    Defendant was persistent in his crime.  Not only did he hack
2    into the e-mail accounts of some of his victims "again and again"
3    (PSR ¶ 23), but he also continued his hacking and attempts to
4    obtain private photographs of victims <u>a mere two and a half</u>
5    <u>months after the FBI executed a search warrant at his residence</u>
6    <u>and seized his computer</u>.  (PSR ¶ 30).  Defendant was still hacking
7    <u>two days</u> prior to his arrest.  (<u>Id.</u>).

8    As detailed in paragraphs 31, 34 and 35 of the PSR, and
9    further discussed in the government's under seal sentencing
10   position filed concurrently herewith, the posting of the private
11   information caused at least some of defendant's victims
12   substantial harm, including physical harm.  With respect to
13   financial harm, as the PSR notes, only a few of the victims'
14   financial harm has been reported to law enforcement/accounted for
15   in the Guidelines calculation.  While an upward departure might
16   be appropriate pursuant to U.S.S.G. § 2B1.1 cmt. n.19(A)(iv)
17   given the risk of substantial loss beyond the loss determined for
18   purposes of U.S.S.G. § 2B1.1(b)(1) as more of defendant's victims
19   report losses or more victims' photographs get posted to the
20   Internet, the government requests that the Court account for this
21   factor by imposing a high-end sentence.

22   Moreover, while the Guidelines calculation properly captures
23   the monetary harm caused by defendant, it fails to account for
24   the emotional and physical suffering of the victims.  The
25   Guidelines themselves recognize this by noting that an upward
26   departure may be appropriate where "[t]he offense caused or
27   risked substantial non-monetary harm.  For example, the offense
28   caused physical harm, psychological harm, or severe emotional

6

trauma, or resulted in a substantial invasion of a privacy interest (through, for example, the theft of personal information such as medical, educational, or financial records). . . ." U.S.S.G. § 2B1.1 cmt. n.19(A)(ii).  Rather than an upward departure, the government respectfully submits that a sentence at the high end of the Guidelines range is therefore appropriate.

Finally, it is worth noting that, as part of his plea agreement in this case, defendant received the benefit of the government forgoing the aggravated identity theft counts charged in this case and the mandatory, consecutive, 24-month sentence that went with them.  Defendant has admitted that he accessed the victims' e-mail accounts, thereby using the victims' e-mail user IDs in furtherance of his crime, a violation for which defendant, if convicted, would have been sentenced to a 24 month consecutive sentence.  While the government does not advocate for any additional time above the high end of the Guidelines range here, the fact that the nature and circumstances of defendant's offenses involved aggravated identity theft is yet another reason for the Court to impose a sentence at the high end of the range.

For all of these reasons, the nature and circumstances of defendant's offense are aggravating.  Defendant himself admitted in a television interview that "I know what I did was one of the deepest invasions of privacy anyone can experience."  (PSR ¶ 39).  Given the scope, invasiveness, and persistence of defendant's crimes as well as the substantial harm caused to the victims in this case, a sentence of 71 months is appropriate.

B.   HISTORY AND CHARACTERISTICS OF DEFENDANT

     With respect to the history and characteristics of defendant pursuant to Section 3553(a)(1), this factor is also aggravating. Defendant has a history of committing the exact same crime, he committed another federal crime, possession of child pornography, simultaneously with the instant offenses, he has a prior federal criminal conviction, and he undoubtedly got a "rush" from the power that his crime gave him over his victims.

     Defendant's history includes other, uncharged criminal conduct virtually identical to the instant offense.  Prior to hacking celebrity email accounts, defendant had hacked into the e-mail accounts of other female victims, including one who was underage for part of the 11 years that defendant was victimizing her.  (PSR ¶ 32).[3]  According to the victim, defendant stole private information and underage nude photographs of her, which

_____

[3]  Although defendant, through counsel, denied this conduct to the media at the time of his initial appearance in this case, there has been a probable cause finding by one magistrate judge that he did commit the conduct.  See Search Warrant, 11-2465M (C.D. Cal. Oct. 21, 2011) (authorizing search of defendant's computer for evidence related to additional conduct).  Moreover, some evidence corroborates the victims' statements.  For example, defendant's computer showed that defendant searched one victim's name in a publicly available database and received results (a method that defendant used to bypass the security on the celebrity victim accounts) and that a log on the computer was consistent with an attempt to reset the password on her e-mail account (the method that defendant used against the celebrity accounts).  (Decl. Of Josh Sadowsky ¶ 10 (filed concurrently under seal)).  With respect to the other victim, the victim's stolen e-mail address was found in Windows Messenger software files on defendant's computer, which was one of several online accounts that the victim has stated were stolen by defendant.  (Id.).  Regardless, the Court need not make a finding by a particular standard of proof that defendant indeed engaged in the conduct because the government is not requesting that the Court use this additional conduct in calculating defendant's advisory Guidelines range.

he posted on a pornography-related website.  (PSR ¶ 35).

Understandably, the victim reported that she has "become

incredibly distressed and frightened for [her] safety, and worry

that [defendant] is capable of causing more harm."  (Id.).

In addition, defendant's characteristics include his

engaging in another uncharged crime unlike the present offense.

As set forth in paragraph 63 of the PSR, an analysis of

defendant's computer showed that he was in possession of eight

videos constituting child pornography.  While defendant has not

to date been charged in Florida for possession of child

pornography, defendant's commission of another federal offense at

the same time as engaging in the instant offense militates

against leniency.[4]

Defendant's history also includes a prior federal felony.

Only July 30, 1998, defendant pled guilty to submitting false

cash surrender claims to Prudential Life Insurance in the amount

of $5,925.78.  (PSR ¶ 66).  He was given probation for that

offense.  (Id.).  It is worth noting that, because of the age of

the offense, defendant was not assessed any Criminal History

points for it.  Nevertheless, it is yet another factor from

defendant's history that militates in favor of a sentence at the

high end of the advisory Guidelines range.

Finally, defendant's "characteristics" include great

satisfaction from the commission of his offenses.  As he admitted

in an interview with Gentleman's Quarterly ("GQ") regarding his

---

[4]     Defendant's admitted dependency on smoking marijuana
(PSR ¶¶ 89-90) does not militate in his favor here either.

1   celebrity e-mail hacking, "[I]t was a rush."  (PSR ¶ 42).

2   Indeed, it was apparently such a rush that he continued to do it

3   after the FBI had come and searched his home seized his computer.

4   (PSR ¶ 30).  Then, in his interview with GQ, defendant seems to

5   brag about his accomplishments (a true and correct copy of the

6   article is attached hereto as an exhibit).  The fact that

7   defendant gains so much satisfaction from the commission of his

8   offense makes it more likely that he will be a recidivist.  That,

9   in turn, militates in favor of greater punishment.

10       The nature and circumstances of the defendant also support

11  significant punishment in this case.  This factor also supports

12  the 71-month sentence requested by the government.

13  C.   NEED FOR DETERRENCE

14       Section 3553(a)(2) requires the Court to consider:

15       the need for the sentence imposed –

16            (A)  to reflect the seriousness of the offense, to
        promote respect for the law, and to provide just
17       punishment for the offense;

18            (B)  to afford adequate deterrence to criminal
        conduct;
19
            (C)  to protect the public from further crimes of
20       the defendant; and

21            (D)  to provide the defendant with needed
        educational or vocational training, medical care, or
22       other correctional treatment in the most effective
        manner.
23

24  18 U.S.C. § 3553(a)(2).  This factor also supports a 71-month

25  sentence.

26       As discussed above, defendant's offenses were serious.  They

27  were serious in scope, invasiveness, harm, and persistence.

28  Here, defendant's continued persistence in his conduct after the

FBI executed the search warrant at his home militates in favor of a greater sentence "to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant."

As to the last factor, the government submits that any training, care or treatment that defendant needs may be provided by the Bureau of Prisons.  Indeed, defendant has already requested treatment for his apparent dependency on marijuana (PSR ¶ 90), and the government concurs in that request.

D.   THE KINDS OF SENTENCES AND THE SENTENCING GUIDELINES

Section 3553(a)(3), (4) and (5) require the Court to consider the kinds of sentences available, the Sentencing Guidelines, and the policy statements issued with the Sentencing Guidelines.  Given all of the other Section 3553(a) factors and as the advisory Guidelines range "advises," imprisonment is the only appropriate "kind" of sentence in this case.  The government urges the Court to adopt the advisory Sentencing Guidelines when sentencing defendant.

E.   NEED TO AVOID UNWARRANTED SENTENCING DISPARITY

Section 3553(a)(6) requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).  This factor also warrants the use of the Sentencing Guidelines range generally and a sentence of 71 months' imprisonment specifically.

Use of the advisory Guidelines range greatly reduces unwarranted disparities in sentencing.  By their very nature, the advisory Guidelines calculations promote uniformity in

11

1   sentencing.

2       Comparison of the sentence sought by the government in this
3   case with the sentences imposed upon similarly situated
4   defendants also supports a sentence of 71 months, the high end of
5   the advisory Guidelines range.  Although the sentences imposed in
6   those cases range from 30 months imprisonment to 72 months
7   imprisonment, any difference between the sentences in those cases
8   and a 71-month sentence in the instant case would not be
9   unwarranted.

10      In United States v. Luis Mijangos, CR 10-743-GHK, the Court
11  imposed a sentence of 72 months[5] on a wheelchair-bound defendant
12  for what the Court called a form of "cyber terrorism."  As
13  detailed in the government's sentencing position in that case,
14  the defendant in that case used "malware" to infect hundreds of
15  victims' computers.  Although he did steal financial information
16  from the computers, his primary goal was to terrorize his
17  victims, including in about a dozen cases obtaining nude and
18  sexually explicit images of his young, female victims.  He did so
19  by turning on the victims' webcams without their knowledge, by
20  pretending to be a trusted person, like a boyfriend, or by
21  extorting the victims by using nude or sexually explicit images
22  that he found on their computers.  The defendant did in fact
23  carry through on a threat to post publicly nude photos of a
24  victim when she failed to comply with his "sextortion."  The
25  defendant also continued to engage in the offense after the FBI
26  searched his home.

27  _____

28      [5]    The government had requested an 84-month sentence.

                                    12

1    Defendant's sentence should be comparable to the sentence
2    imposed on Mijangos because defendant's crimes were comparable.
3    Both defendants' crimes involved a large number of victims.   Both
4    sets of crimes involved the obtaining of nude and sexually
5    explicit photographs of the victims, a subset of which were
6    publicly posted.   Both defendants employed hacking and
7    impersonation of hacking victims to obtain the materials that
8    they sought.   Both continued to pursue their crimes after they
9    were searched by the FBI.   Both defendants pled guilty prior to
10   trial.   It is true that the defendant's extortion attempts in
11   Mijangos were more frightening to the victims than defendant's
12   clandestine theft in this case.   On the other hand, defendant
13   here was not made a paraplegic by a gunshot wound, so he cannot
14   raise medical issues as a reason for a reduced sentence below the
15   advisory Sentencing Guidelines range (which occurred in
16   Mijangos).   In addition, defendant in this case has a federal
17   criminal history while the defendant in Mijangos did not.   A
18   sentence of 71 months' imprisonment in this case would not create
19   an unwarranted disparity in sentencing with Mijangos.

20   In United States v. Michael David Barrett, CR 09-1215-R, the
21   Court imposed a sentence of 30 months (the high end of the
22   applicable advisory Guidelines range)[6] on a defendant for
23   cyberstalking ESPN sideline reporter Erin Andrews.   The defendant
24   in that case obtained hotel rooms near Ms. Andrews on at least
25   two occasions and surreptitiously filmed her nude.   He then
26   posted the videos to the Internet.

27   _____

28        [6]   The government had requested a 27-month sentence.

13

1       The crime in <u>Barrett</u> is not directly comparable to

2   defendant's crime because the conviction itself only involved one

3   victim:  Ms. Andrews.  It is true that the defendant in that case

4   had also surreptitiously videotaped approximately 16 women nude

5   in their hotel rooms, but none of those videos ever became public

6   nor have those individuals been identified.  Here, in contrast,

7   defendant had over 50 victims.  Defendant also forwarded multiple

8   victims' photos, causing them to be posted on the Internet.  In

9   stark contrast to defendant, the defendant in <u>Barrett</u> did not

10  continue to engage in his conduct after being confronted by the

11  FBI, nor did he have any criminal history.  Defendant's conduct

12  and characteristics warrants much greater punishment than that

13  imposed in the <u>Barrett</u> case.

14      Similarly, in <u>United States v. Christopher Osinger</u>, CR 10-

15  758-ODW, the defendant was convicted at a jury trial for stalking

16  his former girlfriend and sentenced to 46 months imprisonment.

17  In that case, the defendant posted sexually explicit photographs

18  of his former girlfriend to the Internet and sent several photos

19  to her direct supervisor and co-workers.

20      Like <u>Barrett</u>, <u>Osinger</u> is distinguishable from the present

21  case.  <u>Osinger</u> involved only a single victim, whereas defendant

22  victimized over 50 people.  <u>Osinger</u>'s criminal conduct took place

23  over the course of one weekend.  Defendant's took place over a

24  period of nearly a year, including additional criminal conduct

25  after the FBI had searched his residence.  A sentence

26  significantly greater than the one imposed in <u>Osinger</u> is

27  appropriate here.

28  //

1    Defendant should receive a sentence of imprisonment

2  comparable to other defendants who have committed similar crimes

3  and have similar histories.  The applicable Sentencing Guidelines

4  and a comparison to other recent and somewhat similar cases from

5  this district support the imposition of a sentence of 71 months

6  imprisonment in this case.  That sentence would not create

7  unwarranted sentencing disparity.

8  F.    RESTITUTION

9    Finally, Section 3553(a)(7) requires the Court to consider

10 restitution at sentencing.  As set forth in the PSR, there is

11 significant restitution at issue in the case ($160,821.40), and

12 the government urges the Court to impose restitution in the

13 amounts of $7,500 to Christina Aguilera, $66,179.46 to Scarlett

14 Johansson, $76,767.35 to Renee Olstead, and $10,374.59 to Aftra

15 Health Fund.  Based on his past employment history which consists

16 of only temporary clerical jobs and periods of unemployment,

17 however, it is unlikely that defendant will be able to repay any

18 significant amount to the victims in this case.  The existence of

19 a large restitution amount also militates in favor of a

20 significant sentence in this case.

21                          **III.**

22                        **CONCLUSION**

23    For all of the foregoing reasons, the government

24 respectfully requests that the Court sentence defendant to a

25 high-end sentence of 71 months imprisonment, restitution in the

26 amounts of $7,500 to Christina Aguilera, $66,179.46 to Scarlett

27 //

28 //

Johansson, $76,767.35 to Renee Olstead, and $10,374.59 to Aftra Health Fund, and a special assessment of $900.[7]

DATED: June 25, 2012      ANDRÉ BIROTTE JR.
                          United States Attorney

                          ROBERT E. DUGDALE
                          Assistant United States Attorney
                          Chief, Criminal Division


                          _____/s/_____
                          WESLEY L. HSU
                          LISA E. FELDMAN
                          Assistant United States Attorneys
                          Cyber and Intellectual Property
                          Crimes Section

                          Attorneys for Plaintiff
                          UNITED STATES OF AMERICA

---

[7]      Defendant has not yet filed his sentencing position. The government requests leave to file a response to defendant's sentencing position when that is filed.

16

<u>CERTIFICATE OF SERVICE</u>

I, **SUSAN M. CRUZ**, declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:
**GOVERNMENT'S POSITION RE: SENTENCING OF DEFENDANT CHRISTOPHER CHANEY; EXHIBIT**

**service was:**
[√] Placed in a closed envelope, for collection and interoffice delivery addressed as follows:

[√] Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows:

[] By hand delivery addressed as follows:

[] By facsimile as follows:

[] By messenger as follows:

[] By federal express as follows:

**SEE ATTACHMENT**

This Certificate is executed on **June 25, 2012,** at Los Angeles, California.

I certify under penalty of perjury that the foregoing is true and correct.

_____
SUSAN M. CRUZ

1

<u>ATTACHMENT</u>

2

3   CHRISTOPHER M. CHESTNUT                (By U.S. mail)
    5080 NEWBERRY ROAD
    SUITE 2A
4   GAINESVILLE, FL 32607
    (352) 377-4444

5

6   U.S. PROBATION OFFICE, 6TH FLOOR      (By interoffice mail)
    ATTN: USPO MAIRI CERVANTES

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28